IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PATRICIA ANN RAINER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:09cv345-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**. Plaintiff Patricia Ann Rainer ("Rainer") was 35 years old at the time of the hearing before the ALJ. (R. 229). She has a ninth grade education. (*Id*.). Her prior work experience includes work as a "fast food worker (light unskilled) and hostess in

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

the restaurant (light, unskilled)." (R. 29). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "status post fracture of the left orbital floor and medial wall of the face; status post fracture of the 4th metacarpal; history of abdominal wound infection, treated and resolved; and obesity." (R. 21). The ALJ concluded that Rainer had the residual functional capacity to perform a "modified range of light work," (*id*.), and that she could perform her past relevant work. (R. 29). Moreover, relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Rainer could perform. (*Id*.). Consequently, the ALJ concluded that she was not disabled. (*Id*.).

    **B. The Plaintiff's Claims**. As presented by the plaintiff, the sole issue before the court is

> whether the ALJ erred by failing to properly apply the pain standard to Plaintiff's allegations of disabling pain, including the improper discrediting of the credibility of the plaintiff's testimony regarding pain.

(Doc. # 19, Pl's Br. at 2, 8). It is to this issue that the court now turns.

### IV. Discussion

    A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family

or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

Rainer contends that the ALJ failed to properly apply the pain standard and failed to articulate sufficient reasons for discrediting her testimony. As explained below, the ALJ did not fully credit Rainer's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires

evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

The plaintiff initially filed for disability due to an injury to her hand. At the first administrative hearing, Rainer testified that she does not use her right hand because of pain and swelling. (R. 229-240). She also testified that she uses Advil and Tylenol for the pain. (R. 240). She further testified that she suffered a fracture to her face in a car accident, and that the fracture had not been repaired because she could not afford the surgery. (R. 242). At the second administrative hearing in June 2008, Rainer testified that she had undergone surgery to repair the orbital blowout fracture in September 2007. (R. 275-76). She further testified that it took three months for her eye to open (R. 276-77), and she still suffers from

pain (R. 277). When asked about her problems, the plaintiff responded as follows.

> A: A lot, I mean pain. This whole side, I wasn't used to using this side because I was always right-handed. So, by using this side just stopped a lot. It just, just kept me a lot. I mean, trying to do the things that I were doing, I mean, it did, it was getting better and it just shut down and I started going back and they kind of figured it's was an infection, already had a body infection, now they're trying to figure out is it the body infection causing from the infection from the eye ir I'm kind of confused. I don't know what's going on. It's just like everything on this side is just shutting down slowly. I mean –
> Q: But you can hear out of that left ear?
> A: I can hear, it's just the running, the running it'll just come but I'm thinking it's infection. When I went to the emergency room they said it was infection –
> Q: How often –
> A: – coming from the eye.
> Q: How often the nosebleed will run?
> A: It just starts, I mean all o a sudden just starts. If I get to moving around a lot it'll just start. I mean --
> Q: Okay.
> A: – the eye itself wasn't like this. If I had too much heat, too much cold, or moving of that side it's just twisting.
> Q: Okay, I get that part but other than the nosebleed the pain, and I would like to ask you on a scale of one to ten with ten being the greatest amount of pain you received how would you rate the type of pain that you'd receive on average?
> A: I'd say just an eight.
> Q: An eight?
> A: Yes.
> Q: Is that in your eye or your whole left extremity, upper extremity?
> A: This just this left side, just it's just a numbness. It's like it's just getting numb.
> Q: Okay, you can proceed with your testimony.
> A: Okay, after, I mean, I thought it was going to get better. Just to be honest, after this surgery I done got worser than I was. I mean, I was doing better, much better before I had the surgery and now I just don't know. It's like this whole left side is just going, just giving me feelings that I never had. I mean, I was able to really use this side much more but now it's like a weak, it's –

\*   \*   \*

(R. 278-80). She testified that she has been prescribed eye drops, (R. 283), and pain medication (Lortab) but she no longer takes the pain medication. (R. 285). Finally, she testified that she had been to the emergency room between six and eight times due to the pain. (R. 288).

Prior to reviewing the medical evidence and reciting Rainer's testimony, the ALJ acknowledged that Rainer has impairments that would reasonably be expected to produce the type of pain about which she complains but the ALJ then concluded that Rainer's statements were "not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (R. 21-22). The ALJ considered Rainer's testimony, the medical evidence of record, and the testimony of the medical expert, (R. 22-27), but then the ALJ discredited Rainer's testimony "of disabling pain . . . [as] inconsistent with objective medical evidence of record to the extent alleged." (R. 28). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ continued his analysis.

> She testified that she has pain on her left side that rates a 7 or 8. She stated that she has pain every day during some part of the day. She said the pain last (sic) about 4 hours a day. She said that the facial blowout keeps her from working. The evidence of record shows that the claimant was seen by Dr. Cox on December 4, 2006 (Exhibit 9F). Dr. Cox noted that the claimant has grossly normal vision of each eye when viewed separately. While she may experience diplopia when looking down, Dr. Cox did not schedule surgery for the claimant because her condition was not of an emergency nature. Dr. Izer noted, in a letter dated August 16, 2007, that he examined the claimant and that the claimant's best corrected visual acuity was 20/20 on the right and 20/40 on

the left. Dr. Izer noted that the claimant has been having persistent double vision and pain in her left eye. He did not, however, describe the pain as severe pain and did not prescribe any medication for hte claimant. On September 12, 2007, Dr. Vicinanzo indicated that the claimant's visual acuity was 20/20 for the right eye and 20/30 for the left eye (Exhibit 13F). Claimant underwent a left orbital floor fracture repair. She followed up with Dr. Vicinanzo on October 4, 2007, and complained of pain and headaches. However, Dr. Vicinanzo diagnosed the claimant as "doing well." At her follow up on October 10, 2007, the claimant was diagnosed as "doing much better" less enophthalmia, and better eye movement. When the claimant was seen on January 9, 2008, she was diagnosed as "doing significantly better (Exhibit 16F). By letter dated January 9, 2008, Dr. Vincinanzo indicated that the claimant has significant greater eye movement after the surgery. Although the claimant continued with some diplopia on down gaze, overall, her orbital volume was better. Her overall eye movements were dramatically better. When seen on February 6, 2008, the claimant did not complain of significant pain. She only complained that she "can't look up/down without eyes wanting to cross." At her follow up on May 9, 2008, again, the claimant did not complain of any eye pain.

\*       \*       \*

Claimant gave inconsistent testimony regarding pain specialist treatment. She testified that she is going to a pain specialist. She also testified that she has not received a referral for a pain specialist.

Claimant testified that she does not bend because it feels like everything rushes to the front and this gets her heart rate up and aggravates her pain. However, Dr. Anderson [the medical expert] testified that the claimant's testimony regarding her ability to bend is not consistent with her medical condition.

Additionally, the claimant testified that she was hospitalized for 8 days due to a spider bite. The evidence of record, however, shows that the claimant was admitted into the Baptist Medical Center on September 27, 2006, for a bug or an insect bite (Exhibits 4F, 7F). Claimant's insect/bug bite hospitalization was for a total of three days only. The claimant followed up with Dr. Tinglin from October 12, 2006 to November 16, 2006 (Exhibit 6F). There is no additional treatment by him after November 2006. Again, I find that the claimant is inconsistent with her testimony with regard to her insect/bug bite.

9

> The record establishes that the claimant received very limited amount of treatment for her allegations. She has not required any further doctor's visits on a continuing basis, hospitalizations, prescribed medications on a continuing basis, or treatment from a pain management specialist. Accordingly, I find that the claimant is not fully credible.

(R. 28-29)

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records, objective evidence, and Rainer's own testimony, the ALJ concluded that the plaintiff's underlying conditions are capable of giving rise to some pain and other limitations, however not to the extent described by the plaintiff. Consequently, he discredited the plaintiff's testimony that she suffers from disabling, intractable pain. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the

plaintiff's testimony were clearly articulated and supported by substantial evidence.

The medical records support the ALJ's conclusion that while Rainer has conditions that could reasonably be expected to produce pain, Rainer was not entirely credible in her description of that pain. For example, Rainer testified that she could not use her right hand at all due to the injury to that hand. Rainer fractured her right fourth metacarpal – her pinky finger on that hand. (R. 105-128). She had surgery to repair the finger and has not sought medical treatment for that problem since February 2006. On August 30, 2007, Rainer was referred to the Alabama Neurological Clinic for a disability evaluation due to "shaking of the right hand." (R. 189-90). No medical records report any shaking of Rainer's right hand and the evaulator did "not see any resting, postural, or intention tremor during exam." (R. 190).

Rainer takes only Tylenol for pain (R. 189, 198, 240, 285, 300). After surgery to repair her orbital blowout fracture, on October 19, 2007, Rainer reported decreased pain to Dr. Vicinanzo and he indicated she was "doing much better." (R. 199). At the first administrative hearing, Rainer testified that she goes to the emergency room once or twice a week, and she seeks treatment at last two or three times a month for the pain. (R. 245, 274). The medical records do not support her testimony. She testified at the second administrative hearing that after the surgery, it took three months for her eye to open, and that her eye subsequently became infected. (R. 277, 282). However, the medical records make no mention of her closed eye or an infection in the eye. Finally, Rainer testified that she had been to the emergency room six to eight times for the pain in her face. (R. 287-88). The

11

emergency room records demonstrate that Rainer presented for treatment no more than three times, and one of those visits was for a toothache. (R. 290).

The plaintiff cursorily argues that the ALJ "did not adequately discuss or properly consider the import of the fact that the claimant went for nearly a full year after suffering the orbital blowout fracture before she was able to obtain the necessary surgical repair, and that the claimant did not have the health insurance or other financial means to afford much of the necessary medical treatment for her orbital blowout fracture or otherwise." (Pl's Br. at 11). While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses noncompliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). However, in *Dawkins*, the claimant was denied supplemental security income benefits because of her failure to follow prescribed medical treatment. 848 F.2d at 1212. The Eleventh Circuit held that a claimant cannot be denied benefits due to her failure to secure medical treatment when poverty may excuse non-compliance. *Id.* at 1213-14. In this case, the ALJ did not deny the plaintiff benefits based on her non-compliance with treatment. Therefore, *Dawkins*, *supra*, is inapposite.

More importantly, Rainer's own testimony regarding her pain management treatment militates against her credibility. During the hearing, Rainer testified that she was "going to go" to a pain specialist, (R. 277), but she later testified that she had an appointment to see a pain specialist but that she had not actually gone to the appointment. (R. 309). Moreover,

she consistently testified that she chooses to use Tylenol rather than prescribed pain medication. (R. 189, 198, 240, 285, 300). Thus, the court concludes that the Commissioner's decision to deny Rainer benefits is supported by substantial evidence.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain and swelling, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 5th day of November 2010.

                                                  /s/Charles S. Coody
                                           CHARLES S. COODY
                                           UNITED STATES MAGISTRATE JUDGE